IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL EDWARD RILEY PLAINTIFF

v. Civil No. 4:24-cv-04130-JTS-SGS

SPECIAL AGENT JOHN JONES;
INVESTIGATOR JAKE EUDY; and
CHIEF DEPUTY JOEY DAVIS DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro* se by Micheal Edward Riley, under 42 U.S.C. § 1983. Currently before the Court are all Defendants' Motions for Summary Judgment and supporting documents. (ECF Nos. 58-60, 63-65). Plaintiff responded. (ECF Nos. 71, 72, 73, 74, 75, 76, 79, 80). Defendants Davis and Eudy replied. (ECF No. 81). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011) the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.[1]

The Court finds the matter ripe for consideration and **RECOMMENDS** both Defendant Jones's and Defendants Eudy and Davis's Motions for Summary Judgment (ECF Nos. 58, 63) should be **GRANTED** and Plaintiff's Complaint should be **DISMISSED** with prejudice.

## I. PROCEDURAL BACKGROUND

[1] Effective April 29, 2026, this matter has been reassigned to the Honorable John Thomas Shepherd, United States District Judge.

Plaintiff filed his Complaint on December 20, 2024, *pro se* and *in forma pauperis*. (ECF Nos. 1-2).[2] In his Complaint, Plaintiff originally named twelve defendants and a alleged multitude of claims. (ECF No. 1). The Honorable Barry A. Bryant, the United States Magistrate Judge previously assigned to this case, issued a screening Report and Recommendation pursuant to 28 U.S.C. § 1915A(b) recommending dismissal of all defendants except Defendants: John Jones, Jake Eudy, and Joey Davis. (ECF No. 8, p. 11). Judge Bryant also recommended Plaintiff's First, Fourth, and Fourteenth Amendment claims alleged against Defendants Jones, Eudy, and Davis as the only claims to proceed. *Id.* The Honorable Susan O. Hickey, the District Judge assigned to the case at the time, adopted Judge Bryant's Recommendation *in toto*. (ECF No. 12).

Defendants Joey Davis and Jake Eudy (collectively hereafter "County Defendants") filed their Motion for Summary Judgment on January 22, 2026, along with a Brief in support and a Statement of Undisputable Facts. (ECF Nos. 58-60). In their Motion and supporting documents, County Defendants argue: (1) they are entitled to qualified immunity; (2) County Defendants did not violate Plaintiff's free speech rights, and even if they did, they did not violate clearly established law as Plaintiff's speech violated Arkansas statutes and should be considered "fighting

[2] Plaintiff is not currently incarcerated, nor was he incarcerated on December 20, 2024. However, in his Complaint, his original set of claims included conditions of confinement claims related to his incarceration in the Howard County Detention Center. (ECF No. 1). Accordingly, this case was classified as a prisoner civil rights matter upon filing. Plaintiff has contended with this designation throughout the litigation. The Honorable Barry A. Bryant, the first United States Magistrate Judge assigned to this case, addressed Plaintiff's arguments on this issue by Order on May 14, 2025, stating: "This case is appropriately designated as Plaintiff brings claims regarding his arrest and incarceration. He need not have been incarcerated at the time of filing his Complaint to warrant that designation. Furthermore, the Court does, by this Order, correct any reference to Plaintiff as a current prisoner in any of its previous docket entries and recognize[s] Plaintiff is a former prisoner instead. However, the screening of Plaintiff's Complaint was appropriately done pursuant to 28 U.S.C. section 1915(e) which applies the same standard as 28 U.S.C. section 1915A(b) in requiring claims that are frivolous, malicious, or fail to state a claim upon which relief may be granted or seek monetary relief from defendants who are immune from relief to be dismissed by the Court. 28 U.S.C. § 1915(e)(B)." (ECF No. 26)

words;" (3) County Defendants did not violate Plaintiff's due process rights because they arrested him, searched his property, and seized his property in a reasonable manner pursuant to valid warrants supported by probable cause; and (4) Plaintiff failed to state any Howard County policy or custom that caused his alleged constitutional violations. (ECF No. 59).

Plaintiff filed his Response and supporting documents to the County Defendants' Motion on March 2, 2026. (ECF Nos. 71, 75, 76, 79). In his Response Briefs, Plaintiff argues: (1) summary judgment must be denied because genuine disputes of material fact remain because he did not commit the crime he was accused of committing thus there was no reason to arrest Plaintiff or search his camper; (2) both the arrest and search warrant did not exist at the time they were purportedly executed, or alternatively; (3) Defendant Jones committed a "*Franks* violation" by lying to the judge to obtain the warrant; and (4) Defendants violated Plaintiff's First Amendment rights. (ECF No. 73, 79).

County Defendants replied arguing: (1) Plaintiff's did not dispute the existence of a valid warrant and its production on this record other than an accusation that Defendants are "lying;" (2) Plaintiff's accusations that Defendant Jones lied in the supporting documents for both warrants has no bearing on his claims against County Defendants; and (3) while Plaintiff alleges Defendants ransacked his home, in his deposition he admitted the only thing damaged at his camper was the padlock on the door. (ECF No. 81).

Defendant Jones filed his Motion for Summary Judgment and supporting documents (ECF Nos. 63-65). In his Brief, Defendant Jones argues: (1) Plaintiff's official capacity claims against him are barred by sovereign immunity; (2) Defendant Jones is entitled to qualified immunity in his individual capacity on all other claims; (3) Plaintiff's Facebook messages are not protected

speech under the First Amendment; and (4) Plaintiff has failed to demonstrate any due process violations regarding his arrest or the search of his home. (ECF No. 64).

In Plaintiff's Response to Defendant Jones's Motion for Summary Judgment he argues genuine issues of material fact remain because (1) there was no reason to arrest or search his camper; (2) both his arrest and the search of his camper were done without warrants and were unreasonable, or alternatively the search was unreasonable because it went beyond the scope of the warrant and was destructive; and (3) Defendant Jones committed a *Franks* violation by submitting false information in the applications and affidavits for his arrest and search warrant. (ECF No. 73).

## II. FACTUAL BACKROUND

The Court notes Plaintiff's presentation of his claims in his Complaint is somewhat convoluted. However, Judge Bryant previously compiled a summation of Plaintiff's factual allegations from his Complaint in the screening Report and Recommendation, and the Court finds it efficient to incorporate Judge Bryant's summation, in pertinent part, here for purposes of the instant Motions for Summary Judgment:

> Plaintiff asserts his claims under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (ECF No. 1, p. 4).
>
> When prompted by the complaint form to indicate how each Defendant acted under color of law as is required by Section 1983, Plaintiff responded:
>
> "All individuals I have named were on duty working as law enforcement officers or as court authorities at the time of the violations of my rights. Jones asked for arrest warrant and Cooper signed one for him, and I went to jail for same warrant. Arrested by Joey Davis on Warrant."
>
> (quoting Plaintiff's Complaint at ECF No. 1, p. 4 (errors in original)).
>
> When prompted by the complaint form to enumerate the facts that gave rise to his claims, Plaintiff provided four pages of factual allegations and claims. The Court will summarize Plaintiff's claims including the relevant facts.
>
> In June 2024, Plaintiff became aware a female acquaintance of his was a confidential informant for "DTF." The female acquaintance "set up" another

> elderly acquaintance of Plaintiff's as a drug dealer. This agitated Plaintiff as he thought it was unfair to the elderly acquaintance. Plaintiff then sent the informant a "message" expressing his opinion of her and the police involved in the criminal case with the elderly acquaintance. According to Plaintiff, he did not threaten anyone in his message, but he did give his opinion about the moral character of the officers involved. (ECF No. 1, p. 10). It was this message that brought about the search of Plaintiff's home and Plaintiff's arrest. The search and Plaintiff's arrest are the crux of his Complaint. (ECF No. 1, p. 11).
>
> Plaintiff asserts Defendant Jones and Eudy broke into his home and stole his phone and computer. He also claims Judge Cooper shouldn't have destroyed his life by signing his arrest warrant without any formal charges or affidavit filed. Additionally, Judge Chesshir should not have signed the search warrant without a supporting affidavit. (ECF No. 1, p. 11). Plaintiff then claims legal procedures were not followed regarding the search warrant executed on his home. Specifically, Plaintiff states the warrant was not returned after execution with an inventory of items seized. *Id.* As a result of this arrest and search warrant Plaintiff was "kidnapped" and illegally held for thirty-five days sleeping on a concrete floor with sewage. *Id.* Plaintiff then lists his claims based on the above facts as: "Bogus charge. False arrest. Malicious prosecution. Violated my right to be free from illegal search and seizure. And violated my right to free speech. And abuse of power on their part." *Id.*

(ECF No. 8).[3]

The Court, like Judge Bryant, construes Plaintiff's remaining claims to be: (1) illegal search of his camper and illegal seizure of his cell phones and computer; (2) improper arrest without a warrant or probable cause; and (3) violation of his First Amendment rights to free speech through retaliatory arrest or improper inducement to prosecute.

On this summary judgment record the parties have submitted multiple affidavits and declarations from the parties involved: (1) Defendant John Jones, Special Agent with the Ninth-West Judicial District Drug Task Force Team (hereinafter "Task Force"); (2) Heather Tweddle, informant and witness for the Task Force in a criminal matter against nonparty Charles Pound; (3) Defendant Joey Davis, Chief Deputy Howard County Sheriff's Office (hereinafter "HCSO"); (4)

---

[3] The Court has omitted the portions of Judge Bryant's recommendations related to claims and Defendants that were dismissed by the Screening Order on March 5, 2025. (ECF No. 12).

Defendant Jake Eudy, Investigator at HCSO; and (5) Plaintiff. The Court will enumerate the pertinent testimony from each below along with complete images of the applicable warrants and supporting documents as well as the Facebook messages at issue.

**Heather Tweedle's Declaration**

Heather Tweedle stated in her Declaration, under penalty of perjury, that she was a witness for the State of Arkansas in a criminal matter against Charles Pounds. (63-1, p. 1). On August 10, 2024, she contacted nonparty Agent Garner from the Task Force about threatening messages she received from Plaintiff on Facebook. She also sent Agent Garner a copy of the messages. *Id.* Prior to sending the messages, Plaintiff came to Ms. Tweedle's house accusing her of working with Agent Garner and Defendant Jones. *Id.* at 2. Ms. Tweedle stated in her Declaration that she refused to open the door for Plaintiff. *Id.* Finally, Ms. Tweedle stated she reached out to Agent Garner because Plaintiff was being aggressive and the messages she received from him on Facebook scared her. *Id.* Ms. Tweedle "left town" shortly after receiving the messages from Plaintiff. *Id.*

**Defendant Jones's Declaration**

Defendant Jones stated in his Declaration that he was employed with the Task Force from December 2021 through February 2025. (ECF No. 63-2, p. 1). The Task Force operates under the authority of the Ninth-West Judicial District of Arkansas Prosecuting Attorney's Office. *Id.* On August 10, 2024, Defendant Jones's partner, Special Agent Justin Garner, was contacted by Heather Tweedle, an informant and key witness for the Task Force in a criminal matter against nonparty Charles Pounds. *Id.* Ms. Tweedle informed Agent Garner that she received threatening messages from Plaintiff on Facebook. Ms. Tweedle also provided copies of the threatening

messages to Defendant Jones and Agent Garner. *Id.* at 2. Plaintiff's messages to Ms. Tweedle are attached to Defendant Jones's Declaration and read:


Mike Riley
1:22 PM
How can u live with yourself after doing another human the way you did Roger? Roger would have gave you his last dollar. Or anyone else. He would have stopped his car to get out and help you if he saw you in trouble. With not a thought to his own safety. You know Heather, at one time, and a like time is coming again real soon, that you, and the people involved, offials included, the ones that oked it and purtisipated in it, would have to be in hiding now. Amd i mean would have went into it the moment he was arrested. And not because of him or someone he knew or could send. But from everybody that may possibly know or find out what u did to him. Cause real soon, all people are gonna learn that to have a safe earth, safe society, people like you amd your garner friend, cant be in it. Cause if you would do something lije that to that old man, who has never hurt anyone, then you would do any thing. Stab your own kid in his fucking eyes so could eat his
meal. Your type removed
Aa

**Mike Riley**

thing. Stab your own kid in his fucking eyes so you could eat his meal. Your type will be removed as soon as identified for what u r. And you have been identified now. Amd i wouldnt be saying this if you and friends had gotten a bad person off the streets. One who has harmed others. Or will harm others. But you didnt. Amd the fact that you did tjis to a person like him, shows you would not dare try to get a real bad guy cause u would be scared. Cowards are what u are. A person, cop, guard, dad, that would help protect the people, would never have did him like this. Your a whole differant type human. Ur fhe ones that need to be locked up. Please, for me, if u never do another honest, descent thing in your life, do this 1 thing for me, you show those cop friends of yours that you helped do that elderly man like that, show them this. Tell them i say that they are cowards. Scum. And that they better do all the evil, bullying coward shit they can while they can cause the people are starting to open their eye[illegible] your coward ways, and starti[illegible] push back.

Aa

**Mike Riley**

can cause the people are starting to open their eyes to your coward ways, and starting to push back. Watch the videos. Its starting small it seems, but its actually already taking off. A year, no more than 2, from now, and your garner buddy will be to scared to stop a speeder. Cause of how many those mfers have had their heads blown off for stopping and harrassing innocent people. You mfers are here in your law capacity to protect and serve. But thats not what u do, now is it? Who got protected or their need for your service met when you contacted roger pounds and asked him if he would get you some dope. Amd yes, you contacted him. He didnt try to sell u mfers a thing. You went to him. Now tell me who did you protect? What act of service did those bastards do for roger? Show this to them. And cause i wish no harm to befall any person, i suggest that all of you keep a close watch out for strangers coming up to you or watching you, maybe learnimg your habits, cause that poor old man may have h[illegible] family and or friends that care [illegible] him. And that just really dont appreciate the way

Aa

**Mike Riley**

thing. You went to him. Now tell me who did you protect? What act of service did those bastards do for roger? Show this to them. And cause i wish no harm to befall any person, i suggest that all of you keep a close watch out for strangers coming up to you or watching you, maybe learnimg your habits, cause that poor old man may have had family and or friends that cared for him. And that just really dont appreciate the way you did the old guy.

2:03 PM

Now i didnt see your name on any papers, but the majority opinion is you did that. 1 guy i think actually has the facts, from roger amd that is, you and a guy contacted him, asking for narcotics, and that it was in your yard that the deal transpired. Now if ive been told wrong, my sincerest apoligizes. But if i was told wrong, why would someone be makeing up such things about you heather? Would be very disconcerting to me if it were i.

Aa

(ECF No. 63-3).

Defendant Jones stated in his Declaration that it was clear to him from Plaintiff's messages that Plaintiff was upset with Ms. Tweedle for her involvement in the case against Mr. Pounds. (ECF No. 63-2, p. 2). Defendant Jones also pointed out specific statements Plaintiff made in his message: (1) "people are gonna learn that to have a safe earth, safe society, people like you and your garner friend, cant be in it;" (2) "your type will be removed as soon as identified for what u r;" and (3) Plaintiff suggested to Ms. Tweedle that she keep watch for strangers who may be watching her because they did not appreciate what she did. (ECF No. 63-2, p. 2) (errors in original). Ms. Tweedle informed Agent Garner that Plaintiff's messages scared her. *Id.* Defendant Jones went on to declare that consideration of the messages and the fact Ms. Tweedle was a key witness in Mr. Pounds criminal case, he had reason to believe Plaintiff committed the offense of Intimidating a Witness under A.C.A. § 5-53-109. *Id.*

On September 25, 2024, Defendant Jones submitted an Affidavit for Warrant of Arrest to Judge Tom Cooper. As Plaintiff claims this Arrest Warrant is not valid and not supported by probable cause the Court includes the Affidavit in its entirety herein:

**THE CIRCUIT COURT OF HOWARD COUNTY, ARKANSAS**
**AFFIDAVIT FOR WARRANT OF ARREST FOR THE FOLLOWING PERSON:**

| | | |
|---|---|---|
| **Michael Edward Riley** | **W/M** | **B FELONY** |
| Defendant's Name | RACE /SEX | |

**1009 3rd Ave, Murfeesboro, AR** **DOB** **/1969**
ADDRESS

Pursuant to Rule 7.1 of the Arkansas Rules of Criminal Procedure, the undersigned Affiant(s), being duly sworn, deposes and says that he has reason to believe that the above person has committed the offense violating A.C.A. **5-53-109 Intimidating a Witness**, in Howard County, against the peace and dignity of the State of Arkansas.

FACTS ESTABLISHING PROBABLE CAUSE

On 08/10/2024 Heather Tweedle, a key witness for the State of Arkansas in State v Charles Roger Pounds, contacted the Task Force and stated that she received threatening messages from Michael Riley on Facebook.

She then sent SA Garner a copy of the messages she received. I reviewed the messages and saw that Riley stated things like "people are gonna learn that to have a safe earth, safe society, people like you and your garner friend, cant be in it."

He tells her that "Your type will be removed as soon as identified for what u r" He goes on to tell her to tell her "cop friends" that they are cowards. He states that "your garner buddy will be scared to stop a speeder. Cause of how many those mfers have had their heads blown off". He then says that he suggest she keep a watch for strangers who may be watching her and who don't appreciate what she did.

Tweedle stated to Agent Garner that these messages scared her and that she did not know what to do about it.

**I, *the undersigned certified law enforcement* officer, do hereby swear on oath that the facts contained in the above Affidavit for Warrant of Arrest are true and correct to the best of my knowledge, information, and belief.**

Date: 09/25/2024

Affiant

*Sworn to and subscribed to me via email on this* 25 *day of* September*, 2024.*

Judge

ORDER

I hereby find that this sworn affidavit demonstrates reasonable and probable cause for the issuance of a warrant(s) of arrest for the above-named individual for the above-stated offense(s). I further order the Circuit Clerk to issue a bench warrant for the above-listed Defendant.

Bond Amount TBS

Bond-Conditions ______________________________________________

Judge

On this 25 day of September, 2024.

(63-4, p. 1). Judge Cooper signed the affidavit acknowledging there was probable cause and issued an arrest warrant on the same day. (ECF No. 63-2, p. 2) (hereinafter "Felony Warrant Affidavit"). It reads:

**WARRANT OF ARREST**

| | |
|---|---|
| Defendant No. | Warrant No. |
| Case Reference No. | Date Issued |
| Citation Reference No. | Entered By |

**STATE OF ARKANSAS**
**COUNTY OF HOWARD**

The State of Arkansas to any Sheriff, Constable, Coroner, Jailer, Marshal or Policeman in the State of Arkansas, greeting:

It is appearing that there are reasonable grounds for believing that **Michael Edward Riley** has committed the offense of **5-53-109 Intimidating a Witness**, in the County of Howard, State of Arkansas. You are therefore commanded to arrest and bring the above-named person before the Circuit Courts of Howard County, State of Arkansas, to be dealt with according to law.

Given under my hand and seal of said court this _______day of __________, 2024.

Judge of the Circuit Court

Defendant's (Last Known) Address
1009 3rd Ave, Murfeesboro, AR

Sex: M
Race: W
Height: 5'08
Weight: 250
Date of Birth: '1969
LA-DL

Alias:

SS. Circuit Court of Howard County, Arkansas:

I, _____________________ received this warrant of arrest for the person of_________________ on the _____ Day of _____________, 2024, and duly served such warrant on the _____ Day of

____________, 2024.

(ECF No. 63-5) (hereinafter "Felony Warrant").

Defendant Jones went on to explain in his Declaration that he routinely worked with the HCSO in his investigations with the Task Force. Accordingly, after he received the above Felony Warrant from Judge Cooper, he reached out to HCSO for assistance. (ECF No. 63-2, p. 3). Then, according to Defendant Jones's Declaration, Defendant Davis, Eudy, and nonparty HCSO officer,

Tallant, executed the Felony Warrant on Plaintiff at his residence. (ECF No. 63-2, p. 3). Defendant Jones also references a Failure to Appear ("FTA") Warrant that Plaintiff had on the day of arrest, but he does not indicate whether Plaintiff was arrested on this warrant. *Id.* Defendant Jones was not present for Plaintiff's arrest, but he was told that Plaintiff took several minutes to come out of his camper and was rustling around inside the camper consistent with someone trying to hide something. *Id.* When Plaintiff did exit the camper, he did not bring his phone, and he locked the camper door with a padlock. *Id.*

Defendant Jones then stated Plaintiff's Felony Warrant stemmed from him using a device to message Ms. Tweedle on Facebook. Additionally, from evidence obtained in a separate case, Defendant Jones had reason to believe Plaintiff's phone contained messages evidencing Plaintiff selling drugs. *Id.* Defendant Jones then completed an application for search and seizure warrant and produced such application to Judge Bryan Chesshir. Defendant Jones also met with Judge Chesshir personally to obtain the executed search and seizure warrant for Plaintiff's residence/camper. (ECF No. 63-2, pp. 3-4) (hereinafter "Search Warrant"). The Application for the Search Warrant and the Search Warrant itself is attached to Defendant Jones's Declaration and is incorporated in full here:

# IN THE CIRCUIT COURT OF HOWARD COUNTY
# STATE OF ARKANSAS

| | | |
|---|---|---|
| STATE OF ARKANSAS | ) | |
| | ) | No. 21SW-25-5 |
| -vs- | ) | |
| | ) | |
| **Michael Edward Riley** | ) | FILED MAR 3 20__ Circuit Clerk Howard County AR |
| **DOB: /1969** | ) | |
| **1292 Bluff Springs Rd.** | ) | |
| **Mineral Springs, Arkansas** | ) | |
| **DEFENDANT(s)** | ) | |

## APPLICATION FOR SEARCH AND SEIZURE WARRANT

COMES NOW BEFORE THE UNDERSIGNED JUDGE OF THE CIRCUIT COURT, of Howard County, State of Arkansas, your Affiant, John Jones, being a duly sworn, qualified and acting Law Enforcement Officer in and for the State of Arkansas, and acting under the colors of authority and supervision of the 9th West Drug Task Force, deposes and states under oath: That your Affiant has reason to believe that, at the property described below does now contain, conceal, or possess articles of evidence in violation of Arkansas State Statute particularly § 5-64-404, Unlawful Use of Communication Device and 5-53-109 Intimidating a Witness.

## Property to be Searched

**Camper at 1292 Bluff Springs Rd. Mineral Springs Arkansas**

## Items to be Seized from the Property to be Searched

The above-described property is currently located within the jurisdictional boundaries of the County of Howard, State of Arkansas, and said property is subject to search and seizure upon one or more grounds as it contains evidence relating to a violation of Sections § 5-64-404, Unlawful Use of Communication Device and 5-53-109 Intimidating a Witness, Arkansas State Statute; within which there is now located certain property and evidence, to wit:

a. Phone or other electronic device capable of sending and receiving electronic messages or calls.

EXHIBIT 6

## AFFIANT'S TRAINING AND EXPERIENCE

I, John Jones, am a duly sworn and acting Law Enforcement Officer with the 9th West Drug Task Force with over 7 years of experience as a law enforcement officer. I am currently employed with the 9th West Drug Task Force. In addition, I have the following training and experience:

- I have conducted several overt and covert narcotics operations resulting in the seizure of controlled dangerous substances and the seizure of methamphetamine and marijuana grow operations within the jurisdictional boundaries of McCurtain County, Choctaw County, Mayes County, and Leflore County in the State of Oklahoma, Lamar County and Bowie County in the State of Texas and Sevier County, Polk County, and Little River County, Howard County, Pike County, Polk County, Hempstead County, Montgomery County, and Miller County in the State of Arkansas.

- I have conducted and participated in many search warrants relating to the search for evidence for the unlawful use, possession, distribution, trafficking, and or manufacturing of controlled dangerous substances.

- I have conducted many interviews of individuals engaged in illegal drug activity such as the unlawful use, possession, distribution, trafficking and or manufacturing of controlled dangerous substances.

- I have worked in an undercover capacity, where illegal narcotics have been purchased and where controlled dangerous substances and stolen property have been seized and recovered.

- I have participated in controlled purchases of various illicit controlled dangerous substances through the utilization of confidential informants.

- I have participated with Federal Wire Intercepts in an attempt to take down drug trafficking organizations.

- I have testified in cases in many instances in both State in Federal level courts.

## Facts Establishing Probable Cause Supporting the Search of Aforementioned "Property to be Searched"

Whereas, appearing before the Court, your Affiant, John Jones, sets forth the following facts as probable cause to support the request of a search warrant:

1. I am a duly sworn and acting law enforcement officer in and for the State of Arkansas, and acting as such, under the colors of authority and supervision of the 9th West Drug Task Force.

2. On 09/26/2024 Michael Riley was arrested from a camper that he is living in parked at the above-mentioned address. Riley took several minutes to come outside after law enforcement announced they were there. Chief Deputy Joey Davis stated that he could hear Riley rustling around in the camper consistent with someone trying to conceal something.

3. Riley had a felony warrant for intimidating a witness. This stemmed from Riley messaging a witness on Facebook Messenger with a multitude of threats on August 10, 2024.

4. Further, I recently did a phone extraction and analysis on a phone belonging to Charles Riley. While going through messages extracted from Charles phone, I saw multiple messages to Michael Riley talking about buying drugs from Michael.

5. On the morning of 09/26/2024 Chief Deputy Joey Davis talked to Michael Riley on a phone with the number of 337-800-0890 and asked Riley to turn himself in. Riley stated he would, however he did not.

6. When Riley was arrested from the camper after rustling around for several minutes and yelling at the cops, he did not bring his phone out of the camper with him he then padlocked the outside of the camper.

7. Michaels electronic device clearly possesses not only the threats to a witness but messages of him selling drugs which would constitute a felony under Arkansas Statute.

8. Inv Jake Eudy with the Howard County Sheriff's Office is watching the camper to make sure no one else goes into the camper until the execution of this warrant.

## Conclusion

I believe that evidence of **Michael Riley** and possible other persons involved in the distribution of the Controlled Dangerous Substances will be discovered during the search of the camper utilized by **Michael Riley 1292 Bluff Springs Rd. Mineral Springs, Howard County, Arkansas.**

I therefore respectfully request that a search and seizure warrant be issued for the **Camper at 1292 Bluff Springs Rd, Howard County, Arkansas** that is accurately described within this affidavit for violations involving Arkansas State Statutes..

For these reasons your affiant prays that a warrant be issued for a search of the camper and persons present, described herein, and that said warrant be issued for a search of the residence not to exceed ten (60) days pursuant to the order.

**Oath**

I, *the undersigned certified law enforcement* officer, do hereby swear on oath that the facts contained in the foregoing Application for Search Warrant, are the truth, the whole truth and nothing but the truth, so help me God.

Date: 9-26-24

Affiant

*Sworn to and subscribed to me on this* 26th *day of* September *2024 at* 11:00 *o'clock*

*[ via email at the location of* Nashville, AR.

Judge

FILED
MAR 3 2025
Circuit Clerk
Howard County
AR

(ECF No. 63-6) (hereinafter "Application for Search Warrant"). Further, the executed Search Warrants reads in total:

# IN THE CIRCUIT COURT OF HOWARD COUNTY
# STATE OF ARKANSAS

**STATE OF ARKANSAS** )
)
-vs- ) No. 31SW-25-5
)
**Michael Edward Riley** )
**DOB: /1969** )
**1292 Bluff Springs Rd.** )
**Mineral Springs, Arkansas** )

**DEFENDANT(s)** )

FILED
MAR 3 2025
Circuit Clerk
Howard County
AR

## <u>SEARCH WARRANT</u>

IN THE NAME AND BY THE AUTHORITY IN AND FOR THE STATE OF ARKANSAS

**TO:** Any Sheriff, Constable, or Policeman in the State of Arkansas:

UPON application supported by sworn affidavit having been filed before the Court, it is hereby found that the premises and all grounds, structures, outbuildings, vehicles, and all persons located at the described premises as follows shall be searched, to wit;

The camper of ***Michael Riley at*** 1292 Bluff Springs Rd, Mineral Springs, Howard County, Arkansas.

The above-described property/residence is located within the jurisdictional boundaries of Howard County. It is reached by travelling west from the Mineral Springs United Post Office which is located at 501 E Runnels St in Mineral Springs for about 0.7 miles to Bluff Springs Rd. Continue west onto Bluff Springs Rd. and travel about 2.0 miles to 1292 Bluff Springs Rd.

The property to be searched is a camper sitting to the northeast of the main residence. The camper sits sitting east and west with the front door facing south.

Law Enforcement is currently sitting on the camper which will eliminate the possibility of serving the warrant on the wrong location.

The above-described property/residence is currently located within the jurisdictional boundaries of the County of Howard, State of Arkansas, and said property/residence is subject to search and seizure upon one or more grounds as it contains evidence relating to a violation of Sections § 5-64-404, Unlawful Use of Communication Device and 5-53-109 Intimidating a Witness, of Arkansas State Statute.

**Property to be Seized from the Property to be Searched**

**Having determined that probable cause does exist and to believe that the Controlled Substance Marijuana, a Schedule IV Controlled Drug is being concealed in the above-described property in violation of Arkansas State Statute particularly § 5-64, the Uniform Controlled Substance Act. The Court now orders that the following items to be searched for and seized if found.**

a. Phone or other electronic device capable of sending and receiving electronic messages or calls.

**It is hereby found that probable cause exists to believe that such property conceals and/or contains such property and/or contraband.**

**THEREFORE, YOUARE HEREBY COMMANDED TO:**

1. Search the above-described premises within a reasonable time not to exceed sixty (60) days.
2. The premises as herein, described as the residence of ***Michael Riley*** 1292 Bluff Springs Rd. Mineral Springs, Howard County, Arkansas.
3. And if any such items of property and/or contraband or ***Michael Riley*** herein described, be found, concealed and/or contained therein, seized any such property and/or person and/or contraband and maintain it according to law.
4. Leave a true and correct copy of this warrant with the occupant or a person who is apparently responsible control of such premises. And, if the occupant or no one else in apparent and responsible control is not present therein, leave a copy of this warrant suitably affixed thereto.
5. Upon completion of the search, make and deliver a receipt, fairly describing the things seized with the occupant or person in apparent responsible control of such premises.
6. Also, a copy of such things and property seized will be made and returned to the issuing Judicial Officer.

7. Within a reasonable time, return this warrant to the issuing Judicial Officer along with a verified report of the execution thereof.

8. During execution of this Search and Seizure Warrant upon discovery of the person(s) or thing(s) so specified, this affiant or a person of responsibility shall take possession or custody of them under authority of this warrant.

**IT IS SO ORDERED**

**Dated this ______ day of __________ 2024.**

**Time**

**Place**

**CIRCUIT JUDGE**

FILED
MAR 3 2025
Circuit Clerk
Howard County
AR

(ECF No. 63-7) ("Search Warrant").

Defendant Jones points out in his Declaration that both the Application for Search Warrant and the executed Search Warrant specifically describe the property to be seized as: "phone or other electronic device capable of sending and receiving electronic messages or calls." (ECF No. 63-2, p. 4).

While Defendant Jones was not present for Plaintiff's arrest, he did arrive afterward and complete the search of Plaintiff's camper with the help of Defendant Eudy. (ECF No. 63-2, p. 4).

Defendant Eudy first used a tool to cut the padlock off the camper door and then Defendants Jones and Eudy looked under furniture, inside cabinets and drawers, and in areas that could conceal small objects like a cellular phone. *Id.* Defendant Jones stated in his Declaration that nothing in the camper was disturbed outside of the necessary course of moving items aside and no property was damaged during the search. *Id.* Defendant Jones took Plaintiff's personal computer and two cell phones, but no other property was removed from the camper. *Id.* After concluding the search, Defendant Jones left a copy of the warrant at the camper, the camper was secured, and Defendant Jones and the other officers left the property. *Id.*

Finally, Defendant Jones stated in his Declaration that he spoke with Plaintiff at the Howard County Detention Center ("HCDC") after the search. He informed Plaintiff his camper was searched and that he would receive a copy of the warrant. Additionally, Defendant Jones questioned Plaintiff at that time. *Id.*

**Defendant Davis's Affidavit**

Defendant Davis testified in his Affidavit that he is a Chief Deputy with HCSO. (ECF No. 58-2). On September 26, 2024, Defendant Davis was notified that Plaintiff threatened a prosecution informant. Defendant Davis knew Plaintiff already had an active arrest warrant stemming from a June 6, 2024 charge of failure to appear. Accordingly, Defendant Davis and two other officers, Todd Tallant and Defendant Eudy, went to Plaintiff's camper to execute the Failure To Appear Warrant of Arrest on him. (ECF No. 58-2, p. 1). This warrant for arrest is attached to Defendant Davis's Affidavit. It was issued on June 6, 2024 by nonparty, Cynthia Grady, and executed by Defendant Davis on September 26, 2024. (ECF No. 58-2, p. 6). The executed FTA Arrest Warrant reads in its entirety:

4:00:53 pm



**WARRANT OF ARREST**

Riley, Michael E
Page 1 of 1

WARRANT #: WR-24-514

STATE OF ARKANSAS
COUNTY OF HOWARD COUNTY
CITY OF NASHVILLE

ORDER

Cash Bond Only

District Court Of Howard County
426 N. Main Street
Suite 7
Nashville, Arkansas 71852
(870)845-7522

Name: Riley, Michael E
Address: 131 Woodland Drive
Nashville, Arkansas 71852

Home: (000)000-0000
Work:
Party #: 9427

Race: White Hair:
Sex: Male Eye:
Alias:

Height: 0.00 DOB: [redacted]
Weight: 0 DL: [redacted]
Employer:

SSN:

The State of Arkansas To Any Sheriff, Policeman, Constable, Coroner, Jailer, Or Marshal In The State Of Arkansas, Greeting. It Appearing That There Are Reasonable Grounds For Believing That The Above-Named Person Has Committed The Offense(s) Listed Below. You Are Therefore Commanded To Arrest And Bring The Above-Named Person Before Jessica S Gunter Judge of the District Court Of Howard County To Be Dealt With According To Law.

Given Under My Hand And Seal Of Said Court This 6th Day Of June, 2024

Judge / Clerk of the Court

SEAL — DISTRICT COURT OF HOWARD COUNTY, ARKANSAS

**WARRANT DETAILS**

| Issue Date | Case Number | Charge Doc Number | Description | Cash Only | Bond Amt | Warrant Fee | Total |
|---|---|---|---|---|---|---|---|
| **Failure To Appear** | | | | | | | |
| 06/06/24 | CR-24-736 | WR-24-514 | Failure To Appear-Class B Misd - TRIAL DATE | No | $195.00 | $50.00 | $245.00 |
| 06/06/24 | CR-10-793 | WR-10-415 | Non-Payment Of Fines | No | $2735.00 | $0.00 | $2785.00 |
| | | | **HOWARD COUNTY TOTALS:** | | $2930.00 | $50.00 | $2980.00 |
| | | | **TOTAL TO COLLECT:** | | $2930.00 | $50.00 | $2980.00 |

I Certify That I Served This Warrant Of Arrest By Then And There Taking Into My Custody The Above-Named Person On The 26 Day Of Sept, 20 24

Chief Deputy Joey Davis
Officer of Service

Service Fee: $_____
Mileage Fee: $_____
Total Fees: $_____

City Court Date: _____
City Court Time: _____
County Court Date: Sept 26, 2024
County Court Time: 1:30 PM

Filed This ____ Day Of ______, 20___

Clerk of the Court

(ECF No. 58-3, p. 6) (hereinafter FTA Warrant").

In the HCSO Incident Report completed by Defendant Davis on September 26, 2024, and also attached to his Affidavit on this record, he stated the offense for arrest as Failure to Appear and listed the code section as 5-54-120. Arkansas Code Annotated § 5-54-120 is the code section detailing the charge of Failure to Appear. Also, in his Arrest Notes on this same Incident Report,

Defendant Davis notes: "On the above date, Deputy Todd Tallant, Deputy Jake Eudy, and myself arrested Michael Riley at a camper at 1292 Bluff Springs Road. We knocked on the door and Michael Riley came out and was arrested and transported to the Howard County Detention Facility." (ECF No. 58-3, pp. 4-5).

Defendant Davis goes on to state that Plaintiff initially refused to come out of his camper, and the officers spoke with Plaintiff through the window of the camper for several minutes. (ECF No. 58-2, p. 1). However, Plaintiff eventually came outside and immediately locked the camper with a padlock. He was then arrested and taken into custody without incident. *Id.* Defendant Davis then transported Plaintiff to the HCDC. *Id.* While booking Plaintiff into HCDC, Defendant Davis received a call from Defendant Jones advising him the Search Warrant was issued for Plaintiff's camper along with the Felony Arrest Warrant for the charge of intimidating a witness. Defendant Davis then returned to Plaintiff's camper to assist with the search. However, upon arrival at the camper, Defendants Jones and Eudy were already inside the camper executing the Search Warrant, so Defendant Davis remained outside the camper and did not assist in the search. Once the search was complete and the camper closed up, the three Defendants left the property. (ECF No. 58-2, p. 2).

**Defendant Eudy's Affidavit**

Defendant Eudy averred in his Affidavit that he is an investigator and former Deputy of HCSO. (ECF No. 58-3). Like Defendant Davis, Defendant Eudy was notified, on September 26, 2024, that Plaintiff threatened a prosecution informant. (ECF No. 58-3, p. 1). Defendant Eudy also knew Plaintiff had an outstanding FTA Arrest Warrant from June 6, 2024. *Id.* Accordingly, Defendant Eudy along with nonparty Officer Tallant and Defendant Davis went to Plaintiff's camper to execute the FTA Arrest Warrant on September 26, 2024. *Id.*

Upon arrival at the camper, the officers knocked on the camper door, but Plaintiff refused to open it. Defendant Eudy and the other officers spoke with Plaintiff through the door for several minutes. *Id.* Plaintiff ultimately opened the door, stepped outside, and immediately locked the camper door with a padlock. The officers then arrested Plaintiff without incident. *Id.* Defendant Davis then transported Plaintiff to the HCDC. *Id.*

Before leaving Plaintiff's camper site, Defendant Eudy received a call from the 9th West Drug Task Force advising the Search Warrant was issued for Plaintiff's camper along with the Felony Arrest Warrant for Plaintiff on the charge of intimidating a witness. *Id.* at 2. Defendant Eudy remained at the camper. When Defendant Jones arrived, he provided Defendant Eudy with a copy of the Search Warrant and Felony Arrest Warrant. *Id.* Defendant Eudy then used a tool to cut the padlock off Plaintiff's camper door, and he and Defendant Jones searched the inside of Plaintiff's camper. *Id.* Regarding the scope of the search, Defendant Eudy specifically stated:

> The search consisted of looking under furniture, inside cabinets and drawers and areas that could conceal a small object like a cellular phone.
>
> Nothing was disturbed in the camper outside the necessary course of moving items aside. [Plaintiff's] property was not damaged in the course of the search.
>
> A personal computer and cell phone were located in the search. No other property was removed from [Plaintiff's] residence.
>
> At the conclusion of the search, [Plaintiff's] camper was secured, and all law enforcement officers vacated the property.

*Id.* at 2.

**Plaintiff's Declarations**[4]

Plaintiff states in his Declaration, under penalty of perjury, that all three Defendants are "liars." (ECF No. 76, p. 1). Specifically, he states they lied in their testimony when they stated they had a search warrant for his camper and that they left a copy of that warrant at his camper after the search. He also states they lied when they swore they secured his camper before they left. *Id.*

Plaintiff further states in his Declaration that he never threatened Ms. Tweedle by message or in person. Plaintiff contends that nothing said in his Facebook message was intended to prevent her from testifying as a witness in any criminal matter. Therefore, he never violated A.C.A. § 5-53-109. *Id.* The "DA" agreed and told Defendants to release Plaintiff from jail. *Id.* at 2.

Plaintiff also states in his Declaration that his phone and computer were in plain sight on the countertop in his camper. Therefore, there was no reason to look anywhere else in his camper for these items. Additionally, "they" left the camper "looking like a bomb had hit it." *Id.* Moreover, Plaintiff states there was no reason to conduct a search for either of these devices as he freely admitted to writing the Facebook messages and those messages were available on Facebook for review. *Id.*

Next, Plaintiff states Defendant Jones perjured himself on both the Felony Arrest Warrant Affidavit and Application for Search Warrant. *Id.* Plaintiff states, Defendant Jones "predated" these documents to "get out of this lawsuit" by stating Plaintiff had threatened someone. Further,

---

[4] Plaintiff filed two Declarations, (ECF No. 72, pp. 2-4; ECF No. 76, pp. 1-3), but the Court is unable to determine which is in response to Defendant Jones's Motion for Summary Judgment and which is in response to County Defendants' Motion for Summary Judgment. However, both Declarations contain the same information and statements from Plaintiff. Therefore, the Court finds them interchangeable and supporting of both of his Responses.

Plaintiff states Defendant Jones has filed falsified exhibits in this matter with the help of his attorney Zaisha Heardmon. *Id.*

Plaintiff also states he has repeatedly requested discovery in this matter that has been ignored. Plaintiff states he requested in writing through the mail and at his deposition for the "meta data of the emails that both the [Felony Arrest Warrant] and [Search Warrant Affidavits] state that they were applied for by," but Defendants have never produced. Plaintiff states this discovery was not produced because it did not exist. *Id.* Which, according to Plaintiff, proves that the search and arrest warrant did not exist until Defendants Davis and Eudy were served with the summons for this lawsuit. *Id.*

Finally, Plaintiff states another falsehood in Defendants' declarations is their interactions with Plaintiff at his camper before his arrest. Plaintiff maintains he immediately opened the window to his camper when Defendants Davis and Eudy, and Officer Tallant arrived to arrest him. Plaintiff was within the officer's sight the entire time talking on the phone. The only "rustling" was Plaintiff putting on his shirt while in plain view of the officers. *Id.*

**Additional Facebook Messages**

Plaintiff produced additional Facebook messages showing Ms. Tweedle's response to the subject messages and a set of messages between himself and non-party Lester Pennington. (ECF No. 80). Plaintiff claims the messages between Plaintiff and Pennington show Plaintiff was "hundreds of miles away in another state" when he found out about Ms. Tweedle involvement in the arrest of Charles Pounds. Plaintiff contends this proves he could not have gone to her house to threaten her. *Id.* The messages between Plaintiff and Pennington produced by Plaintiff read in total:


3:54 69%

Lester Alvi...

JUL 30, 2024 AT 9:51 PM

Boy that was a long trucks!!, and them gas station tall boys have saved a many of men !! I wish I knew how that track ho was at that speed and out of control, ovecorce that speed would make it out of control, but I wonder how it got to fast to lose control ! That was crazy shit !

For some reason still no mail !
You been doing good I




(ECF No. 80).

Further, Plaintiff claims the messages from Ms. Tweedle, in response to his purportedly threatening text messages, show she did not feel threatened by him. The message response from Ms. Tweedle to Plaintiff read as follows:


3:42
72%
Heather Eli...
AUG 9, 2024 AT 3:47 PM
Mike, if this is ever the last thing I ever say to you in my entire life ever again please understand and PLEASE know and believe me when i tell you just like I have tried to tell so many others that I did not and would absolutely never FKN do that to Roger. He was always nice and good to me and I'm sorry that you can accually attempt to look at me like that type of human being this is what makes me sad

USC



3:42 72%

Heather Eli...

to fight my way through life I never got not ONE easy road I was ever offered to take. My mother traded me for dope since I was 11 to the age of 14 years old. All because she needed to get high. I'm going to be brutally honest with you and say things I would not ever say to someone but you I will because you need to know and understand what I'm telling you and what I've been going through with this hasn't been easy for me. But I need ONE just

USCA8 :


3:42
72%
Heather Eli...
you! You are going to take this how you want weather you believe me or not. But I didn't live the life I lived and fought to get to where I am today without blowing my fucking head off because of the trauma I have had to endure since I was a child. I learned how to cook dope before my mother taught me how to cook a meal. I watched people. Be murdered, put in the river and drug back out and left. And it was nothing to me it was


3:43
72%
Heather Eli...
they get all upset and
shit over to me would be
nothing compared as to
where ide been in life. I
came home to Arkansas
from Oklahoma to try to
live a normal life but little
did I know there's no
such things as FKN
normal but I already
knew that I just wanted it
to look that way. I'm a
damaged ass FKN
human being on the
inside out mentally and
physically. I've had guns
to my head rape after
rape traded and raped for
my mother's dope I've


3:43
72%
Heather Eli...
Did I see him recent yes I did. I brought him the money so he could get it when dude got off work that morning. But what no one sees or what they know is that paper said the amount was $200.00 Damnitt listen double that then times 1 ontop of that. If I handed Roger dirty ass cop money and it was more than $200 of there money they damn sure wouldn't say any less on that paper I can promise you that remember I've been busted before. But these


3:43
72%
Heather Eli...
nashville for Mike, he had been at Jrs and had to go somewhere else before I could meet up with him he didn't come to my house I met him. He couldn't come to my house bc remember my mother lives right beside me! Take this message how you want but I assume you I have already started packing because if it's not one person it's another and that's what is fixing to get me killed Tiffany and Blake started it first. And Tiffany wouldn't shut her

USC


3:43
72%
Heather Eli...
happy right now. AT ALL! So I'm going where I'm safe for a while I have to miss out on seeing my kids for a little bit but ide rather them be safe all bc stupid ass mfkrs that DONOT KNOW WHO THE FUCK I AM WHAT IM CAPABLE OF AND WHAT THE FUCK I HAD TO DO TO BE HERE TODAY! But that's ok Mike, COMING FROM MY GODDAMN SOUL hear me and hear me loud please I. AM. NOT. A . FUCKING. SNITCH. From where I come from there wasn't

USC.

(ECF No. 79, pp. 11-19).

**Plaintiff's Deposition Testimony**

Plaintiff testified in his deposition that he did send the Facebook messages submitted on this record to Ms. Tweedle. (ECF No. 58-1, p. 31). Plaintiff also admits he can see now in hindsight where the messages "could be intimidating." *Id.* However, he maintains that he did not mean for them to intimidate her at the time. *Id.* He insists he had no intent to intimidate Ms. Tweedle at the time he sent the Facebook messages. *Id.* at 34.

Plaintiff also testified in his deposition that Defendants Davis and Eudy along with nonparty Officer Tallant came to arrest him on September 26, 2024. Defendant Jones was not present at his arrest. Plaintiff was informed at his arrest when he got into the police vehicle that he was being arrested for "misdemeanor fines, misdemeanor warrant on unpaid fines." (ECF No. 58-1, pp. 43-4). Plaintiff goes on to testify that even though that is what he was told at the time of arrest, he does not believe he was arrested on the FTA Warrant. *Id.* at 44. Plaintiff did not receive the FTA Warrant until 6:00 p.m. that evening, but he was immediately served with the Felony Warrant for intimidating a witness upon arriving at the jail. *Id.* Plaintiff admits he was aware of both the FTA Warrant for arrest and the Felony Warrant for arrest for intimidating a witness on September 26, 2024. *Id.*

In response to questions regarding how Defendant Jones violated Plaintiff's constitutional rights regarding his arrest Plaintiff testified:

> Yes, because his name's on the thing going to Tom Cooper for an arrest warrant that violated my constitutional right. Actually, I can tell you saying my name, saying whatever he said to get the warrant, you know, I didn't intimidate no witness. He violated my rights by telling Cooper that I had, by going to Cooper at all. He was violating my rights for freedom of speech. I should be able to say anything I want about those crooked son of bitches.

(ECF No. 58-1, p. 70).

When Plaintiff was given a copy of the Felony Arrest Warrant Affidavit in his deposition, he testified he had never seen it before and stated: "I can assure you that this was made after that day." (ECF No. 58-1, pp. 48-9). Plaintiff admits he was served with the Felony Arrest Warrant but testifies he never got the Affidavit supporting the Felony Arrest Warrant for intimidating a witness. *Id.* When asked what evidence he had to prove the Felony Arrest Warrant Affidavit did not exist on September 26, 2024, Plaintiff testified he would call the "Court clerk" to testify no Affidavit was ever filed in his criminal case. *Id.* at 50. Plaintiff alleges in his Deposition that the Affidavit for his Felony Arrest Warrant for intimidating a witness is a "forged" document. (ECF No. 58-1, p. 51). Also, Plaintiff does not disagree that Judge Cooper signed the Felony Arrest Warrant. He just disagrees with Judge Cooper's finding of probable cause to support the Felony Arrest Warrant. *Id.* at 52-3.

Regarding the Search Warrant for his camper, Plaintiff testified Defendant Jones told Plaintiff at the HCDC, the day of his arrest, that he got a Search Warrant for his camper and got his phone and computer. (ECF No. 58-1, p. 55). However, Plaintiff never saw the Search Warrant. *Id.* at 56. Further, he testified "protocol" was not followed because the Search Warrant was not left at his camper, they did not file the Search Warrant with the Court Clerk within five days, and they failed to secure his camper back after the search. *Id.* at 57. Instead, according to Plaintiff, the Search Warrant was filed the day Defendants Eudy and Davis were served with the instant lawsuit. *Id.* When Plaintiff was asked what evidence he had to prove the Search Warrant did not exist on September 26, 2024, he testified: "I don't even know yet." *Id.* at 58.

Plaintiff further testified, regarding the Search Warrant, that he sees Judge Chesshir's signature on the Warrant, but he does not "believe that." (ECF No. 58-1, p. 66). Plaintiff believes it was sent by email to Judge Chesshir because it says on the Warrant it was sent by email. *Id.*

Plaintiff wants to see the email accounts of Judge Chesshir and Defendant Jones to prove it was sent. *Id.* Plaintiff testified that if there are no emails between Defendant Jones and Judge Chesshir on September 26, 2024, it will prove the Search Warrant did not exist on the day of the search. *Id.* at 71.

Additionally, even if Judge Chesshir actually signed the Search Warrant, Plaintiff disputes his finding of probable cause. *Id.* at 67. Plaintiff believes there was no reason to conduct a search of his camper because he told Ms. Tweedle to show the messages to her cop friends, and any mention of marijuana is completely unsupported by corroborating evidence. *Id.*at 67-69.

Regarding Defendants Davis and Eudy, Plaintiff agrees that neither played any role in submitting affidavits for the Search Warrant. (ECF No. 58-1, p. 76). When specifically asked how they played a role in the Search Warrant, Plaintiff responded: "Your client was only involved in it by being there when he searched it." *Id.* Plaintiff also testified he took no issue with the manner in which Defendant Davis arrested him on September 26, 2024. (ECF No. 58-1, p. 78).

Plaintiff testified he has no physical injuries from any of his claims herein. (ECF No. 58-1, p. 73). Lastly, the only broken item at his camper during the search was the padlock on the front door. *Id.* at 79.

Finally, Plaintiff testified he was in custody at the HCDC for 35 days—22 of those days were for the outstanding fines he was picked up on for FTA. (ECF No. 58-1, p. 63-65, 92). Plaintiff states the other 14 days were for the illegal arrest of intimidating a witness. *Id.*

**Plaintiff's Criminal Docket**

The Court attempted to review Plaintiff's criminal docket for the instant charge of intimidating a witness as such docket would likely contain material information related to Plaintiff's claims herein. *Stutzka v. McCarville,* 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (court may

take judicial notice of judicial opinions and public records). However, the only document filed was the Search Warrant and Affidavit in support of Search Warrant. *State v. Michael Edward Riley*, 31SW-25-5, https://caseinfo.arcourts.gov/opad/case/31SW-25-5 (last visited July 27, 2026). Further, as alleged by Plaintiff, these documents were filed on March 3, 2025, after Plaintiff filed this lawsuit in December 2024 and Defendants Davis and Eudy were served on March 3, 2025. (ECF No. 16). There is no indication on the publicly available Arkansas Court Connect records that Plaintiff was charged with intimidating a witness, or that any prosecution ensued. Furthermore, the summary judgment record is devoid of any booking information for Plaintiff from the HCDC on September 26, 2024.

Plaintiff testified in his deposition that he was never charged with intimidating a witness and that he has now received his seized property back. *Id.;* (ECF No. 58-1, p. 65).[5]

## III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

[5] Plaintiff also filed Statements of Disputed Facts. (ECF Nos. 74-75). These disputed facts are numbered and comply with Federal Rule of Civil Procedure 56. The Court has thoroughly reviewed such disputes and determined all such disputes have been enumerated herein through the rendition of Plaintiff's sworn testimony in his Declaration and Deposition.

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

As previously stated, the Court construes Plaintiff's remaining claims to be: (1) illegal search of his camper and illegal seizure of his cell phones and computer; (2) improper arrest without a warrant or probable cause; and (3) violation of his First Amendment rights to free speech through retaliatory arrest or inducement to prosecute. Plaintiff has alleged these claims in both individual and official capacities meaning he also alleges these claims against Howard County and the State of Arkansas. (ECF Nos. 1, pp.8-9). Defendants have both asserted qualified immunity, and Defendant Jones has assert sovereign immunity against his official capacity claim. (ECF Nos. 59, 64). After a thorough review of the summary judgment evidence and the parties arguments the Court has determined that Plaintiff disputes: (1) that either warrant (search or arrest) existed on September 26, 2024; and alternatively (2) that Defendant Jones was truthful in his affidavits for application of both warrants; and finally, (3) that his arrest regarding the messages to Ms. Tweedle violated his rights to free speech through retaliatory arrest or inducement to prosecute. The Court

will first address Defendant Jones's claim of sovereign immunity against Plaintiff's official capacity claim as he was an employee of the State of Arkansas during the time at issue. Next the Court will address Plaintiff's official capacity claim against County Defendants. Then, the Court will address each of Plaintiff's three remaining claims in turn as they relate to each specific Defendant.

**Sovereign Immunity—Jones**

Defendant Jones was employed with the Task Force at the time in issue. The Task Force operates under the authority of the Ninth-West Judicial District Prosecuting Attorney's Office, making Defendant Jones an agent of the Prosecutor. (ECF No. 63-2, p. 1). In Arkansas, prosecuting attorneys are officers of the state. Ark. Const. amend. 80, § 20. Accordingly, any official capacity claim asserted against Defendant Jones is essentially a claim against the State of Arkansas.

States and state agencies are not "persons" subject to suit under section 1983. *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)), *overruled on other grounds by Hafer v. Melo,* 502 U.S. 21 (1991). "A suit against state employees in their official capacities is the functional equivalent of a suit against the State." *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2013). Accordingly, any legal or equitable relief sought against Defendant Jones in his official capacity is barred and such claims should be dismissed.

**Official Capacity—County Defendants**

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claim against County Defendants is treated as a claim against Howard County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Howard County's liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Thus, Plaintiff's official capacity claim against County Defendants is "functionally equivalent" to alleging their employer, Howard County, had a policy, custom, or took an official action that deprived him of his constitutional rights. *Veatch*, 627 F.3d at 1257; *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

To establish a claim for "custom" liability, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, p. 828 (8th Cir. 2013). "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* at 828 (internal citation omitted).

While Plaintiff makes vague and conclusory statements regarding corrupt behavior of Howard County law enforcement officials in general, Plaintiff wholly failed to allege any facts or assertions that County Defendants' alleged actions were committed pursuant to a policy or practice of the governmental entity. Furthermore, he has not argued County Defendants' alleged actions were pursuant to a custom or policy of Howard County. Accordingly, all of Plaintiff's official capacity claims against County Defendants fail as a matter of law.

**Qualified Immunity**

Next, all Defendants have asserted qualified immunity against all of Plaintiff's claims in their individual capacities. Qualified immunity "shields [a] government official[] from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Watson v. Boyd,* 2 F.4th 1106, 1109 (8th Cir. 2021) (internal citation and quotations omitted).

The Court may use its discretion in determining which of these two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a constitutional right was not clearly established

at the time of deprivation, then the Court need not determine whether the particular plaintiff's constitutional rights were violated based on the facts before it because the defendant is entitled to qualified immunity regardless. *See Dimock, v. City of Brooklyn,* 124 F.4th 544, 550 (8th Cir. 2024).

For this analysis, the Court looks to the law at the time of the incident on September 26, 2024. The Supreme Court has cautioned that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal citation and quotation omitted). A right is clearly established if it is sufficiently clear for every reasonable official to understand the actions would violate a constitutional right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotations omitted). The case precedent need not be directly on point, but it must place the constitutional question beyond debate. *White*, 580 U.S. at 79 (internal citation and quotation omitted). The Eighth Circuit recently expounded on this standard by explaining "[a] clearly established right is dictated either by controlling authority or a robust consensus of cases of persuasive authority." *Dimock*, 124 F.4th at 550 (internal quotations and citations omitted). The *Dimcok* Court went on to explain the legal principle must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id*.

The Court will analyze all of Plaintiff's remaining claims through the lens of Defendants' qualified immunity assertions.

**Illegal Arrest Claims**

Plaintiff claims he was arrested illegally, on September 26, 2024, because the Felony Arrest Warrant for intimidating a witness—Ms. Tweedle—was improperly obtained by Defendant Jones or alternatively did not exist at all at the time of his arrest. (ECF No. 1).

First, the Court addresses Plaintiff's claim that the Felony Arrest Warrant did not exist on September 26, 2024. Plaintiff testified in his deposition that he received a copy of the Felony Arrest Warrant after arriving at the HCDC on September 26, 2024. (ECF No. 58-1, pp. 43-46). Accordingly, the Court need not address Plaintiff's claim the warrant did not exist as it is clearly undisputed that the Felony Arrest Warrant existed when Plaintiff received a copy of it on September 26, 2024, immediately following his arrest.

Next, the Court will address Plaintiff's claim he was illegally arrested on September 26, 2024. "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright,* 844 F.2d 567, 569 (8th Cir. 1988) (internal citations omitted). Furthermore, even if the arrest warrant was found invalid for reasons not apparent from the face of the warrant, the arresting officers are generally entitled to qualified immunity as long as no facts are alleged from which it could be inferred a reasonable officer would have known that the actions he took were illegal. *See Stigall v. Madden,* 26 F.3d 867, 869 (8th Cir. 1994) (existence of a warrant shields the deputy "from liability for executing it, unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization"). Finally, "[l]iability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). To state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that violated the Plaintiff's constitutionally protected rights.

Here, it is undisputed that Plaintiff had an outstanding FTA Arrest Warrant from Howard County issued on June 6, 2024. (ECF No. 58-3, p. 6). Plaintiff does not challenge the validity or

existence of this FTA Arrest Warrant in any way in his Complaint. (ECF No. 1). Plaintiff also testified in his Deposition that he was informed at the time of arrest that he was being arrested for "misdemeanor fines, misdemeanor warrant on unpaid fines." (ECF No. 58-1, pp. 43-4). Plaintiff does however argue that he does not believe he was arrested pursuant to this FTA Arrest Warrant because Defendant Davis did not have the FTA Arrest Warrant on his person during the arrest.

Arkansas law does not require that an officer have an arrest warrant in his possession when he arrests an individual. Ark. R. Crim. P. 4.3. Moreover, Plaintiff testified he was given a copy of the FTA Arrest Warrant later in the day after his arrest. (ECF No. 58-1, p. 46,49).

Plaintiff's major contention in his Response is his allegation that Defendant Davis told Plaintiff he was being arrested for intimidating Ms. Tweedle after arriving at the HCDC and gave Plaintiff a copy of that Felony Arrest Warrant about five minutes after arriving at the HCDC from his arrest. *Id.* According to Plaintiff, this proves he was arrested pursuant to the Felony Arrest Warrant for intimidating a witness and not the FTA arrest warrant. *Id.*

The Court is unconvinced by Plaintiff's arguments in the face of the summary judgment evidence. The summary judgment record includes an executed FTA Arrest Warrant dated by Defendant Davis on September 26, 2024. (ECF No. 58-2, p. 6). Additionally, both Defendants Davis and Eudy testified in their Affidavits that they arrested Plaintiff pursuant to the FTA Arrest Warrant. (ECF No. 58-2, pp. 1, 4-5; ECF No. 58-3, pp. 1, 4-5). Finally, the incident reports from Howard County regarding Plaintiff's arrest on September 26, 2024 indicate he was arrested for a failure to appear charge. (ECF No. 58-2, p. 4-5).

Moreover, the Felony Arrest Warrant presented on this record is not executed. (ECF No. 63-5). Additionally, Defendant Jones's Incident Report on the charge of intimidating Ms. Tweedle

is dated September 30, 2024, four days after Plaintiff's arrest by Defendants Davis and Eudy, and it does not indicate any arrest was made. (ECF No. 63-8). Most interestingly, there is no indication of a criminal prosecution of Plaintiff related to an intimidating a witness charge or arrest on the publicly available Arkansas Criminal Court Records website.

As to Plaintiff's illegal arrest claim, Defendant Jones cannot be held liable under Section 1983 for Defendant Davis and Eudy's actions in arresting Plaintiff pursuant to the FTA Arrest Warrant that he played no part in obtaining or executing. *See Madewell,* 909 F.2d at 1208. It is undisputed that Defendant Jones was not present during Plaintiff's arrest on September 26, 2024. (ECF No. 58-1, p. 43).

Second, Defendants Davis and Eudy are entitled to qualified immunity for executing an arrest of Plaintiff pursuant to the facially valid FTA Arrest Warrant. *See Stigall,* 26 F.3d at 869. The Court need not take allegations asserted by the Plaintiff as true when they are clearly contradicted by the summary judgment record. The Court must view the facts in the light most favorable to Plaintiff, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, when the parties tell conflicting stories the Court is not required to believe facts blatantly contradicted by the record so that no reasonable jury could believe them. *Id.* Nor can the Court rely on speculation or conjecture to create a genuine issue of material fact. *See Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir. 1994).[6] Plaintiff does not support his allegation that

---

[6] The Court notes that the attorneys in this matter seem somewhat confused as to what arrest warrant was executed on Plaintiff at his camper on September 26, 2024. The County Defendants' Brief states: Plaintiff was arrested on the Felony Arrest Warrant, (ECF No. 59, p. 7); and Defendant Jones's Brief states: both the Felony Arrest Warrant and the FTA Warrant were executed, (ECF No. 64, p. 3). However, the Affidavits from the arresting officers, (ECF Nos. 58-2, 58-3), and the incident reports and warrants themselves clearly indicate it was the FTA Warrant which was executed on September 26, 2024. No copy of the executed Felony Arrest Warrant is on this

Defendants Davis and Eudy arrested him pursuant to the Felony Arrest Warrant with any more than a mere scintilla of evidence and speculation, and such cannot create an issue of fact in the face of such well documented summary judgment evidence presented herein. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-52 (1986).

Accordingly, the Court finds both Defendants Davis and Eudy are entitled to qualified immunity for Plaintiff's arrest on September 26, 2024, as they arrested him pursuant to the facially valid FTA Arrest Warrant.

Plaintiff's alternate claims that Defendant Jones improperly acquired the Felony Arrest Warrant will be addressed below in the section on *Franks* violations.

**Illegal Search and Seizure Claims**

The Court construes Plaintiff's illegal search claim to state three separate grounds: (1) the Search Warrant did not exist at time of the search thus making the search illegal; and alternatively (2) if the Search Warrant did exist, the search conducted went beyond its scope because the items to be seized pursuant to the warrant were sitting in plain view on the kitchen counter; and (3) Defendant Jones and Eudy did not conduct the search in a reasonable manner. (ECF No. 1).

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.[7] Further, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

summary judgment record, (ECF No. 62-5), and the incident report for intimidating a witness is dated September 30, 2024, (ECF No. 63-8, p. 1-2).

[7] The Court recognizes Plaintiff also lists the Fourteenth Amendment in his Complaint as a basis for his claims. (ECF No. 1, p. 4). However, when a "particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for

and particularly describing the place to be searched, and the persons or things to be seized." *Id.* "To be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause may be found in the place to be searched." *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir. 1998). "Probable cause for a warrant exists only when the totality of the circumstances provides sufficient facts to lead a prudent person to believe there is a fair probability that contraband or other evidence of a crime will be found." *Hunter v. Namanny,* 219 F.3d 825, 830 (8th Cir. 2000). The Supreme Court and the Eighth Circuit recognize "[o]nce a judicial officer has issued a warrant upon a finding of probable cause" great deference will be afforded to that issuing judges' findings. *Walden,* 156 F.3d at 870 (citing *Illinois v. Gates,* 462 U.S. 213, 236 (1983)).

First, the Court notes it is undisputed Defendant Davis did not participate in the search of Plaintiff's camper. He arrived back at the site after the search was underway and did not enter Plaintiff's camper during the search. (ECF No. 58-2, p.2). Defendant Davis cannot be liable pursuant to Section 1983 for actions he did not take or cause. Accordingly, any claims asserted against him for improper search and seizure fail as a matter of law. *See Madewell,* 909 F.2d at 1208.

Second, the Court finds Plaintiff has failed to raise a genuine issue of material fact as to whether the Search Warrant existed on September 26, 2024. First the documents on the summary judgment record supporting the existence of the Search Warrant include: (1) a file marked copy

---

analyzing these claims." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998). The Fourth Amendment provides an explicit textual source of constitutional protection against unreasonable searches and seizures. U.S. Const. Amend IV. Therefore, the Court will apply it here.

from Howard County Circuit Clerk of the Application for Search and Seizure Warrant with a handwritten acknowledgement by Judge Bryan Chesshir dated September 26, 2024, at 11:00 a.m., on the supporting Oath, stating it was signed in Nashville, Arkansas, (ECF No. 63-6); (2) a file marked copy from Howard County Circuit Clerk of the Search Warrant also containing a hand written acknowledgment by Judge Bryan Chesshir on September 26, 2024 at 11:00 a.m. in Nashville, Arkansas (ECF No. 63-7); (3) Defendant Jones's Declaration, sworn under penalty of perjury, that he prepared the Application for Search Warrant and met with Judge Chesshir personally for his signature, (ECF No. 63-2, pp. 3-4); and (4) Defendant Eudy's testimony, in his Affidavit, also sworn under penalty of perjury, that he received a copy of the Search Warrant from Defendant Jones at Plaintiff's camper before they began the search, (ECF No. 58-3, p. 2).

In the face of the summary judgment evidence produced by Defendants, Plaintiff must produce evidence on which a jury could reasonably find the Search Warrant did not in fact exist. *See Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012).

Plaintiff supports his contention the copy of this Application and Search Warrant is fraudulent with the following summary judgment evidence: (1) he never received a copy of the Search Warrant until he filed this lawsuit, (ECF No 58-1, pp. 55-8); (2) a copy of the Search Warrant was not filed with the Howard County Circuit Clerk until March 3, 2025, well after this lawsuit was filed, (ECF No. 58-1, p. 57); (3) the execution by Judge Chesshir of the Oath on the Application for Search Warrant states it was done by email, (ECF No. 63-6, p. 4); and (4) Defendant Jones, through his attorney in this matter, represented in discovery that no emails exists between Judge Chesshir and Defendant Jones related to this Search Warrant or its Application, (ECF No. 69; 69-1).

Even considering all of Plaintiff's assertions as true, the Court does not find a reasonable jury could determine the Search Warrant did not exist on September 26, 2024. *See Gibson,* 670 F.3d at 853. At this stage, Plaintiff must do more than show some metaphysical doubt as to the material facts. *See Matsushita,* 475 U.S. at 587 (explaining the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and he may not rest on mere allegations or pleading denials, but must "come forward with specific facts showing that there is a genuine issue for trial"); *Bolderson v. City of Wentzville, Missouri,* 840 F.3d 982, 986-87 (8th Cir. 2016) (the non-moving party must meet proof with proof to survive summary judgment).

The Court recognizes Plaintiff's valiant efforts through discovery to locate meta data or emails regarding the Search Warrant, and Plaintiff was successful in his efforts in proving no emails exist.[8] Accordingly, the Court accepts the fact no emails were exchanged between Judge

---

[8] Plaintiff made extensive arguments during discovery that this statement "via email" indicated the Search Warrant was signed over email. (ECF Nos. 69-70). Thus, if the Search Warrant was emailed between Defendant Jones and Judge Chesshir there would be metadata or emails with date and time stamps indicating when the search warrant was signed. *Id.* The Court granted Plaintiff's Motion to Compel ordering Defendant Jones to produce any emails between himself and Judge Chesshir regarding Plaintiff's Search Warrant. (ECF No. 62). Defendant Jones's attorney complied with this Order to Compel informing Plaintiff that no such emails exist. (ECF No. 69-1). Plaintiff filed an Objection to the Court's Order to Compel arguing Defendant Jones's should have to produce "a sworn declaration, under penalty of perjury, detailing the specific forensic or IT search methods used to determine that no emails exist. Or state that no emails exist, because there were never any emails sent. And that his Affidavit and Application for a search warrant submitted to this court as ECF Document 63-6 . . . are all fabrications and lies." (ECF No. 69).

The response by Defendant Jones's attorney indicating no emails between Defendant Jones and Judge Chesshir exist is a sufficient discovery response pursuant to the Federal Rules of Civil Procedure. Furthermore, it complies with the Court's Order to Compel. Additionally, Defendant Jones did submit a sworn statement in his Declaration on this summary judgment record that he met with Judge Chesshir personally to obtain the signed Search Warrant. (ECF No. 63-2, p. 3-4). Therefore, when the Court considers this sworn statement, as Plaintiff requests, along with

Chesshir and Defendant Jones regarding the Search Warrant as an undisputed fact on this summary judgment record. However, this undisputed fact does not create a material issue for trial. *See Davenport v. City of Little Rock,* 142 F.4th 1036,1041-2 (8th Cir. 2025).

In *Davenport*, the plaintiff argued that a search warrant was fabricated after the fact. The Eighth Circuit affirmed the district court's grant of summary judgment on Davenport's Fourth Amendment claims for unlawful search and entry explaining the theory of fabrication was not supported by the summary judgment record. *Id.* This Court finds the same here. The summary judgment record in *Davenport* included, like the instant record, a copy of the subject search warrant that was signed and dated by a judge and file marked by the appropriate court. *Id.* Unlike the record here, the *Davenport* record also included an attestation by the clerk of court stating she recognized the signing judge's signature and stating that the warrant had been filed the day after the search occurred. *Id.*

The plaintiff in *Davenport* presented competing evidence by pointing to another search warrant, regarding the same suspects, executed in the same investigation, on the same day, on a neighboring structure. That warrant contained additional court filing seals that the contested warrant did not contain. The court clerk could not explain this discrepancy, but the plaintiff failed to show how it was relevant to the existence of the warrant on the day of the search. *Id.* Finally, the plaintiff in Davenport pointed to select officer statements referring to "a" warrant when there should have been "two" warrants since two structures were searched. However, there were competing officer statements that referred to "two" warrants. *Id.*

---

Defendant Jones's attorney's representation pursuant to Court order that no emails exist, the Court is satisfied that no emails exist.

Here, Plaintiff heavily relies on the reference to "via email" in Judge Chesshir's signature on the Application for Search Warrant. This reference appears here:


*Sworn to and subscribed to me on this* ____ *day of* ________, *2024 at* ________ *o'clock*

*[ via email at the location of* ____________.

Judge

(63-6, p. 4).

Like the lack of additional court seals in *Davenport*, there is no explanation on this record for the inclusion of "via email" on Judge Chesshir signature on the Search Warrant Application. However, the Search Warrant itself, which was also dated by Judge Chesshir on the same day as the Application, does not include any reference to email:

**IT IS SO ORDERED**

**Dated this 28th day of ________ 2024.**

11:00 AM
**Time**

**Place**

**CIRCUIT JUDGE**




(ECF No. 63-7, p. 3). The Court finds this unexplained discrepancy an insufficient fact to survive summary judgment. *Davenport,* 142 F.4th at 1042 (explaining that a scintilla of evidence in support of plaintiff's position is insufficient to survive summary judgment) (citing *Gibson,* 670 F.3d at 853)). Plaintiff's theory requires a belief that a conspiracy ensued in which Judge Chesshir agreed to postdate the Search Warrant, the Howard County Clerk filed a fraudulent document when accepting the Search Warrant; both Defendants Jones and Eudy conspired to create and postdate the Search Warrant and perjured themselves in Affidavits to this Court, and Defendant Jones's attorney (an officer of this Court bound by a strict code of legal ethics) lied on this record in the face of an Order to Compel when she stated no emails exists between Defendant Jones and Judge Chesshir.

Furthermore, the Court did not overlook Plaintiff's allegations he never received a copy of the Search Warrant or any receipt of his seized property, and the delay in the filing of the Search Warrant.[9] While these may show sloppy procedure, these facts do not provide sufficient evidence to support the allegation the Search Warrant did not exist in the face of the signed and file-marked copy of the Search Warrant on this summary judgment record. *Id.*

Plaintiff also argues Defendants went beyond the scope of the Search Warrant during their search. On the face of the Search Warrant it indicated: "The camper of Michael Riley at 1292 Bluff Springs Rd, Mineral Springs, Howard County, Arkansas" was to be searched. (ECF No. 63-7, p. 1). Plaintiff does not contend Defendants Jones and Eudy searched the wrong camper. Instead, in his Declaration, he argues his computer and phone were sitting in plain sight on the kitchen counter, so the Defendants had no reason to search through the entire camper. (ECF No. 72, p. 3). Also, he argues, it looked like a "bomb" went off in his camper and they left the door unlocked when they left. *Id.*

The Search Warrant authorized the following as property to be seized during the search:

> Phone or other electronic device capable of sending and receiving electronic messages or calls.

---

[9] To the extent Plaintiff attempts to assert a constitutional violation related to Defendants Jones and Eudy's failure to provide him with a copy of the Search Warrant or a receipt of the items seized, the Court finds both Defendants Jones and Eudy are entitled to qualified immunity to such a claim. *DeArmon v. Burgess,* 388 F.3d 609, 612 (8th Cir. 2004) (officers were entitled to qualified immunity for violations of state criminal procedure or Federal Rule of Criminal Procedure 41 by failing to leave a copy of the warrant or receipt after a search and seizure). Additionally, Judge Bryant previously addressed any property seizure claims in his screening R&R. (ECF No. 8).

(ECF No. 63-7, p. 2). While there was no receipt of property seized submitted on the record the parties do not dispute that one computer and two cell phones were seized during the search. (ECF No. 58-1, p. 69).

The Court notes that the items seized were exactly what the Search Warrant authorized—phones and a computer—which reasonably falls into the described category of "electronic device capable of sending and receiving electronic messages." Further, the Search Warrant did not list a particular phone or state only one phone or one device was the subject of the search. Officers executing search warrants are not obligated to interpret the warrant narrowly. *See Mountain Pure, LLC v. Roberts,* 814 F.3d 928, 933 (8th Cir. 2016) (holding officer's seizure of a business's drawings, schematics, and operating manuals were reasonable seized under a search warrant authorizing seizure of "business records" and "purchase records" of a company being investigated for fraudulent application for disaster relief). Accordingly, the Court finds Defendants Eudy and Jones are entitled to qualified immunity when they continued to search for additional electronic devices capable of sending messages even though Plaintiff's phone and computer were sitting on the kitchen counter in plain sight.

Next, Plaintiff seems to challenge the reasonableness of Defendant Eudy and Jones's search when he complains his camper looked like a "bomb" went off inside it and the door was left unlocked. There is no evidence on the summary judgment record to indicate what if any property was damaged during the search. In his deposition Plaintiff testifies the padlock on his front door was the only damaged property and the camper was a mess before the search occurred. (ECF No. 58-1, pp. 78-9).

The Fourth Amendment does protect against unreasonable or unnecessarily destructive searches and seizures. *See Ginter v. Stallcup,* 869 F.2d 384, 388 (8th Cir. 1989). However, the

law recognizes that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States,* 441 U.S. 238, 258 (1979). Further, the method of executing a search warrant is generally within the discretion of the executing officers and the officers only lose qualified immunity if their actions were objectively unreasonable. *Walden v. Carmack,* 156 F.3d 861, 869 (8th Cir. 1998). The Eighth Circuit has specifically recognized "dumping trash and emptying closets and drawers are activities that are reasonably necessary to conducting a thorough search" for small items identified in a search warrant, and breaking locks on entry doors are not objectively unreasonable. *Cook v. Gibbons,* 308 Fed.Appx.24, at *31 (8th Cir. 2009).

Accordingly, based on the current record, the Court finds Defendants Jones and Eudy's manner of searching Plaintiff's camper was objectively reasonable and within clearly established law. Thus, they are entitled to qualified immunity for their actions during the search of Plaintiff's camper. *Cook,* 308 Fed.Appx. at 31.

***Franks* Violation**

In his Response, Plaintiff makes an additional alternate argument that Defendant Jones committed a *Franks* violation in both his Felony Arrest Warrant Affidavit and the Search Warrant Application. (ECF No. 73, p. 23). In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant application." *United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir. 1995).

Under *Franks v. Delaware*, if the government intentionally includes materially false statements in its warrant affidavits or includes materially false statements with reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must set aside

those statements and then review the remaining portions of the affidavits to see if what remains is sufficient to establish probable cause. Criminal defendants bear the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit. *Id.* (internal quotation marks and citation omitted).

This same analysis applies to Section 1983 claims alleging a probable cause affidavit for an arrest warrant included false information or omitted truthful information. *Howe v. Gilpin*, 65 F.4th 975 (8th Cir. 2023); *see also Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (noting *Franks* had been extended to cover recklessly omitted information).

> Including a false statement in a warrant affidavit is a *Franks* violation when the defendant establishes by a preponderance of the evidence that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in a warrant affidavit, and (2) the false statement was necessary to the finding of probable cause.
>
> Omitting information violates *Franks* when (1) ... facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and (2) ... the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*Estate of Nash*, 92 F.4th at 754 (internal quotation marks and citations omitted). Innocent mistakes or negligence do "not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010).

"In a § 1983 case, the issues are whether 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' and, if deliberate falsehood is alleged, whether the affidavit is truthful, which 'means that the information put forth is believed or appropriately accepted by the affiant as true. Omissions and falsehoods that are immaterial or not supported by the record do not suffice.'" *Howe*, 65 F.4th at 980 (quoting *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009) (cleaned up)).

Here, it is undisputed that Ms. Tweedle was an informant and witness for the State of Arkansas during the time in issue. It is further undisputed that Plaintiff sent Ms. Tweedle the above-included Facebook message regarding her role in the arrest of Mr. Pounds. Plaintiff does not dispute the content of the messages, but only disputes that such content was intended to be threatening. Plaintiff claims that Defendant Jones lied to obtain his Felony Arrest Warrant and the Search Warrant. (ECF No. 74).

However, the Court cannot determine the Affidavit for Felony Arrest Warrant or the Application for Search Warrant on this summary judgment record contain falsities. First, the Felony Arrest Warrant Affidavit included the following facts sworn to by Defendant Jones: (1) Ms. Tweedle, a key witness in an ongoing criminal case, contacted the Task Force and stated she received "threatening messages" from Plaintiff on Facebook that scared her; and (2) Ms. Tweedle then sent Defendant Jones's partner, Special Agent Garner, a copy of the messages and Defendant Jones reviewed the messages. Defendant Jones then listed a few of the statements made by Plaintiff in the subject messages but did not include a copy of the entire message thread for the Judge's review. The statements Defendant Jones included: (1) "people are gonna learn that to have a safe earth, safe society, people like you and your garner friend, cant be in it;" (2) "Your type will be removed as soon as identified for what u r;" (3) "your garner buddy will be scared to stop a speeder. Cause of how many those mfers have had their heads blown off;" and (4) Defendant Jones then states in the Affidavit that the Plaintiff suggested to Ms. Tweedle "she keep a watch for strangers who may be watching her and who don't appreciate what she did." (ECF No. 63-4, pp. 1-2). After a review of the full Facebook message, the Court concludes all of these statements are in fact included in the Facebook messages. (ECF No. 63-3).

The Court notes that Defendant Jones did not include Plaintiff's entire message in the Felony Arrest Warrant Affidavit, or Ms. Tweedles's response message. However, the Court does not find this omission material. This Court has reviewed the entirety of the messages, included above in the Factual Background. The Court finds if the Felony Arrest Warrant Affidavit were supplemented with this omitted information it would still support a finding of probable cause. *See Estate of Nash*, 92 F.3d at 754; *Block v. Dupick,* 758 F.3d 1062, 1064 (8th Cir. 2014) (an officer is still entitled to qualified immunity if [her] affidavit, supplemented by the omitted facts, still supports a probable cause finding."). Accordingly, the Court finds Defendant Jones is entitled to qualified immunity on Plaintiff's *Franks* argument as it relates to the Felony Arrest Warrant. *Id.*

Regarding the Application for the Search and Seizure Warrant Defendant Jones included the following assertions facts: (1) Plaintiff was arrested at his camper on September 26, 2024, but Plaintiff took several minutes to come out of the camper after arresting officers announced themselves; (2) Defendant Davis stated he could hear Plaintiff rustling around inside the camper consistent with someone trying to hide something; (3) Plaintiff had a Felony Warrant for Arrest for intimidating a witness through Facebook "with a multitude of threats on August 10, 2024;" (4) Defendant Jones recently did a phone extraction and analysis on a phone belonging to Charles Riley and saw multiple message to Plaintiff talking about buying drugs from Plaintiff; (5) Defendant Davis spoke with Plaintiff on the phone on September 26, 2024, at the number 337-800-0890 asking Plaintiff to turn himself in but Plaintiff did not; (6) when Plaintiff was arrested at his camper he did not bring his phone with him out of the camper and he locked the camper with a padlock prior to being taken into custody; (7) Plaintiff's electronic device clearly possesses not only the threats to a witness but messages of him selling drugs which would constitute a felony under Arkansas Statute; and (8) Defendant Eudy is positioned at Plaintiff's camper to ensure no

one else enters until this search warrant can be executed. (ECF No. 63-6, p. 3). Defendant Jones went on to conclude in his Application for Search Warrant that:

> I believe that evidence of [Plaintiff] and possible other persons involved in the distribution of the Controlled Dangerous Substances will be discovered during the search of the camper utilized by [Plaintiff] 1292 Spring Rd. Mineral Springs, Howard County, Arkansas.

(ECF No. 63-6).

Again, Defendant Jones did not attach the Facebook messages between Plaintiff and Ms. Tweedle to the Application. However, the statement that a Felony Warrant had issued based on those messages is not false information. Furthermore, the Court previously determined the omission of the entirety of the messages was immaterial. *See Estate of Nash*, 92 F.3d at 754; *Block v. Dupick,* 758 F.3d 1062, 1064 (8th Cir. 2014) (an officer is still entitled to qualified immunity if his affidavit, supplemented by the omitted facts, still supports a probable cause finding.").

Next, Plaintiff disputes that he rustled around in his camper consistent with concealing something, however, he does not dispute he failed to immediately come outside his camper upon the officer's arrival nor does he dispute he left his cell phone inside the camper when he did exit. Accordingly, even without the statement regarding the rustling, the Court finds Judge Chesshir could have found probable cause to issue the search warrant for Plaintiff's cell phone inside the camper.

Finally, Plaintiff testified in his deposition that he had no idea what Defendant Jones was talking about regarding text messages between himself and his cousin regarding drugs. (ECF No. 58-1, p. 58). Again, even without the statement regarding drugs, the Court finds Judge Chesshir would have probable cause to issue search warrant for Plaintiff's phone or other electronic device regarding the Facebook messages to Ms. Tweedle.

Accordingly, the Court finds Defendant Jones is entitled to qualified immunity related to Plaintiff's *Franks* argument on the Search Warrant. *See Estate of Nash*, 92 F.3d at 754; *Block v. Dupick,* 758 F.3d 1062, 1064 (8th Cir. 2014) (an officer is still entitled to qualified immunity if his affidavit, supplemented by the omitted facts, still supports a probable cause finding.").

**First Amendment Retaliation Claim for Speech**

In Plaintiff's final claim, he asserts his arrest for intimidating a witness violates his First Amendment rights. First, as Defendants point out, Plaintiff has not made a constitutional challenge to A.C.A. § 5-53-109, the Arkansas intimidating a witness statue. Accordingly, there is no facial challenge to consider. On the contrary, Plaintiff claims his statements do not fall within Section 5-53-109, his statements were protected speech under the First Amendment, and he was only arrested with intimidating a witness because he hurt the officers' feelings. (ECF No. 73).

The Court interprets the crux of Plaintiff's First Amendment claim to be one of retaliation for speaking out against the officers and Ms. Tweedle in his Facebook messages. Plaintiff clarifies this in his deposition when he explains his reasoning for believing Defendant Jones is liable for his arrest even though Defendant Jones did not arrest him: Plaintiff believes Defendant Jones violated his rights to free speech by going to Judge Cooper to get an arrest warrant based on Plaintiff's Facebook message statements. Plaintiff further asserts he should be able to say anything he wants about Defendant Jones and the other officers mentioned in his Facebook message. (ECF No. 58-1, p. 70).

To state a general First Amendment retaliation claim, Plaintiff must show: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the

adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). In addition, when the retaliatory claim is one for a retaliatory arrest or retaliatory inducement to prosecute, the plaintiff must also show there was no probable cause to support his arrest or underlying criminal charge or prosecution. *See Nieves v. Bartlet,* 587 U.S. 391, 404 (2019); *Hartman v. Moore,* 547 U.S. 250, 260-1 (2006). Meaning, Plaintiff must not only allege facts to establish the three elements for general retaliation, but he must also plead and prove the absence of probable cause for his arrest. *Id.*

First, as determined by the Court herein, Plaintiff was arrested by Defendants Davis and Eudy on a valid FTA Warrant. Therefore, Plaintiff cannot maintain a retaliatory arrest claim as his arrest was valid and supported by a valid warrant that has not been challenged in this case. *Id.*

However, the Eighth Circuit and United States Supreme Court have also recognized a retaliatory inducement to prosecute claim. *See Small v. McCrystal,* 708 F.3d 997, 1009 (8th Cir. 2013) *abrogated on other grounds by Laney v. City of St. Louis,* 56 F.4th 1153, 1157 n.2 (8th Cir. 2023); *Hartman,* 547 U.S. at 265 (holding a showing of retaliatory motive on the part of the governmental official, combined with an absence of probable cause, is "enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge"). Giving Plaintiff's Complaint a liberal construction as he is proceeding *pro se*, this claim appears to fit Plaintiff's allegations against Defendant Jones. However, even if the Court interprets Plaintiff's First Amendment claim as such, it still fails as a matter of law because the Felony Arrest Warrant was supported by probable cause. *Id.*

The Fourth Amendment requires probable cause in order to arrest an individual. U.S. Const. amend. IV. An arrest warrant must be supported by probable cause at the time it is issued.

Meaning, the totality of the circumstances must be sufficient to lead a reasonable person to believe that the subject of the arrest warrant committed the claimed offense. *Ulrich v. Pope Cnty,* 715 F.3d 1054, 1059 (8th Cir. 2013) (internal quotations omitted). This Court provides great deference to the finding of probable cause by a neutral judicial officer through the issuance of an arrest warrant. *See Illinois v. Gates,* 462 U.S. 213, 236 (1983) (internal quotations omitted). Finally, an eventual determination of innocence does not negate the initial finding of probable cause for an arrest warrant. *See Joseph v. Allen,* 712 F.3d 122, 126 (8th Cir. 2013). The Court will not second guess Judge Cooper's finding of probable cause to arrest based on accurate information that is undisputed by Plaintiff—his own statements from the Facebook Messages.

Moreover, Plaintiff was not prosecuted for any charges related to intimidating a witness. The record does not even show he was ever arrested for or charged with intimidating a witness. However, if he was arrested for this charge, the record indicates such an arrest would have been supported by probable cause shown in the Felony Arrest Warrant Affidavit.

Accordingly, Plaintiff cannot state a cognizable First Amendment claim based on his arrest or any attempt to induce prosecution for intimidating a witness when the summary judgment record clearly shows probable cause existed to arrest him and potentially prosecute him. *See Nieves v. Bartlet,* 587 U.S. 391, 404 (2019); *Hartman v. Moore,* 547 U.S. 250, 260-1 (2006).

## V. CONCLUSION

For the reasons stated above, I recommend County Defendant's Motion for Summary Judgment (ECF No. 58) be **GRANTED** and Defendant Jones's Motion for Summary Judgment (ECF No. 63) be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE.**

**Referral Status: The referral in this matter should be terminated.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 10th day of August 2026.**

/s/ Spencer G. Singleton
HON. SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE